UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALLAN D. SCHUBERT, | : |
| | : |
| Plaintiff, | : |
| | : Civil Action No. 22-3658 (CKK) |
| v. | : |
| | : |
| FEDERAL BUREAU OF INVESTIGATION, *et al.*, | : |
| | : |
| Defendants. | : |

**MEMORANDUM OPINION**

Plaintiff Allan D. Schubert brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, against two components of the United States Department of Justice ("DOJ"): Federal Bureau of Investigation ("FBI") and Federal Bureau of Prisons ("BOP"). This matter is before the Court on defendants' Motion for Summary Judgment, ECF No. 23, and plaintiff's Motion to Amend Relief Requested, ECF No. 27. For the reasons discussed below, the Court GRANTS summary judgment for defendants and DENIES plaintiff leave to amend.[1]

---

[1] The Court's consideration focused on the following documents, including attachments:

- Motion for Summary Judgment (ECF No. 23), Statement of Undisputed Material Facts (ECF No. 23-1, "SMF"), and Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment (ECF No. 23-2, "Defs.' Mem.")
- Plaintiff's Opposition to Defendants' Motion for Summary Judgment with Authorities in Support and Objections Cited (ECF No. 28, "Pl.'s Opp'n")
- Motion to Amend Relief Requested (ECF No. 27, "Mot. Am. Relief")
- Combined Reply in Support of Defendants' Motion for Summary Judgment and Response to Plaintiff's Motion to Amend (ECF No. 29, "Reply").

1

## I. BACKGROUND

### A. Request to the FBI

"On August 15, 2022, [p]laintiff submitted a request to the FBI," SMF ¶ 2, for the following information:

> Any and all names, phone numbers, or other electronic identifications of any users that engaged or searched any of the criminal information systems/networks in reference to my criminal history for the months of November 2021, to and through August 2022.

Defs.' Mem., Ex. (ECF No. 23-3, "Seidel Decl.") ¶ 5; *see* Seidel Decl., Ex. A (ECF No. 23-4). The request "did not state that [plaintiff] was attempting to submit a Privacy Act request or request any information about himself." SMF ¶ 3. "Plaintiff did not enclose a privacy waiver for any person other than himself, [or] proof of death of any person." *Id.* ¶ 4.

FBI, which assigned the request tracking number FBI 1557552-000, *id.* ¶ 5, responded "it would neither confirm nor deny the existence of [responsive] records pursuant to FOIA exemptions (b)(6) and (b)(7)(C)," *id.* ¶ 7 (internal quotation marks omitted). In addition, "FBI voluntarily chose to . . . search . . . its primary case management system" using two variations of plaintiff's name as search terms, *id.* ¶ 12, and found no responsive records about plaintiff, *id.* ¶ 13. FBI notified plaintiff of its determination by letter dated August 25, 2022. *Id.* ¶ 14.

Plaintiff appealed FBI's determination administratively to DOJ's Office of Information Policy ("OIP"). *Id.* ¶ 15. OIP closed the appeal "due to the pendency of [this] lawsuit," *id.* ¶ 16, which plaintiff filed on November 2, 2022, *see* Compl. (ECF No. 1).

### B. Request to the BOP

Plaintiff submitted a similar FOIA request to BOP, SMF ¶ 17, seeking "identifying information of individuals who accessed his criminal history or other information between

November 2021 and August 2022," Defs.' Mem., Ex. 3 (ECF No. 23-5, "Villa Decl.") ¶ 7; *see* Villa Decl., Ex. 2 (ECF No. 23-6).  The request "did not state that [plaintiff] was attempting to submit a Privacy Act request or request[ing] any information about himself."  SMF ¶ 18.  BOP assigned the matter tracking number 2022-05550.  SMF ¶ 25.

BOP deemed SENTRY, its "national database which tracks various data regarding an inmate's confinement," Villa Decl. ¶ 8; *see* SMF ¶ 19, "the only BOP record system that could reasonably be described as a 'prisoner look up' system."  SMF ¶ 20.  Because SENTRY "does not have the ability to track and report what transactions are completed by users," *id*. ¶ 22, BOP determined that no responsive records existed, SMF ¶ 25.  BOP informed plaintiff of its determination by letter dated August 26, 2022.  *Id*.

Plaintiff appealed BOP's determination to OIP, *id*. ¶ 26, and OIP "affirmed BOP's conclusion that the records [p]laintiff sought did not exist," *id*. ¶ 27; *see* Villa Decl., Ex. 7 (ECF No. 23-10).

## II. LEGAL STANDARDS

### A. Amendment of the Complaint

Generally, leave to amend a complaint should be freely granted "when justice so requires."  FED. R. CIV. P. 15(a)(2).  "[T]he grant or denial of leave to amend is committed to a district court's discretion."  *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  In determining whether "justice so requires" amendment, the Court considers factors including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment[.]"  *Atchinson v. District of Columbia*, 73 F.3d 418, 425-26 (D.C. Cir. 1996) (quoting *Foman v. Davis*, 371 U.S. 178, 182

(1962)).  The Court "may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss." *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) (citing *Foman*, 371 U.S. at 181–82).

### B.  Summary Judgment in a FOIA Case

#### 1. Federal Rule of Civil Procedure 56

A FOIA case typically is resolved on a motion for summary judgment.  *See Petit-Frere v. U.S. Attorney's Office for the Southern District of Florida*, 800 F. Supp. 2d 276, 279 (D.D.C. 2011), *aff'd*, No. 11-5285, 2012 WL 4774807, at *1 (D.C. Cir. Sept. 19, 2012) (per curiam).  The Court grants summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on an element of the claim.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations or documentary evidence to the contrary.  *See Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

In a FOIA case, the Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations, *see Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999), as long as they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith," *Military Audit Project v. Casey*,

656 F.2d 724, 738 (D.C. Cir. 1981) (footnote omitted).  Agency affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'"  *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. Cent. Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### 2. Local Civil Rule 7(h)

Under the Local Civil Rules of this Court, a "motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement."  LCvR 7(h)(1).  In accordance with Local Civil Rule 7(h), defendants submit a Statement of Undisputed Material Facts in 31 sequentially-numbered paragraphs with citations to the portions of the record on which they rely.  *See generally* SMF.

The opposition to a summary judgment "motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement," as well as a memorandum of points and authorities.  LCvR 7(h)(1).  "[The] Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." *Id*.

### 3. Defendants' Proffered Facts are Admitted

The Court issued an Order (ECF No. 24) on August 7, 2023, advising this *pro se* plaintiff of his obligations under the Federal Rules of Civil Procedure and the Local Civil Rules of this Court and warning him the Court would accept as true any factual assertions contained in

defendants' affidavits or attachments in support of their motion for summary judgment unless plaintiff submitted affidavits or evidence showing that defendants' assertions are untrue. Because plaintiff did not respond to defendants' statement of material facts, submit a statement of his own, or otherwise controvert defendants' proffered facts, the Court treats defendants' proffered facts as admitted. *See, e.g., Clemente v. FBI*, No. 1:20-cv-1527 (TNM), 2022 WL 17092585, at *2 (D.D.C. Nov. 21, 2022) (treating FBI's Statement of Material Facts Not in Dispute as admitted because plaintiff failed to respond to FBI's summary judgment motion). Still, the Court must determine for itself whether the agencies meet their obligations under FOIA and under Rule 56. *See Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 506–07 (D.C. Cir. 2016) (explaining that district courts cannot treat a motion for summary judgment as conceded for want of opposition because "[t]he burden is always on the movant to demonstrate why summary judgment is warranted").

## III. DISCUSSION

### A. Plaintiff's Motion to Amend

"Plaintiff is not seeking to amend" his FOIA claims, and, instead, wants to expand the scope of his FOIA requests. Mot. Am. Relief at 1. According to plaintiff, his requests set a date range "from October or November 2021 to January or February 2022," and now he "seek[s] to enlarge the window from 2 or 3 months to the last ten . . . years." *Id*. Defendants oppose the motion, *see generally* Reply at 6-8, for good reason.

An agency "has a duty to construe a FOIA request liberally," *Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995), but it is "not obliged to look beyond the four corners of the request," *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996). Here, plaintiff's FOIA requests are limited to a nine-month period,

from November 2021 through August 2022, and he may not expand the scope of his request in the course of this litigation. *See Day v. U.S. Dep't of State*, No. 1:17-cv-1418 (EGS), 2020 WL 1078955, at *6 (D.D.C. Mar. 6, 2020) (concluding that State Department "does not run afoul of FOIA by failing to search for or produce records other than those related to [plaintiff's] August 9, 2013, request," as a request "pertain[ing] to plaintiff and events occurring in Mexico between 2008 and 2011, would [not] have called for a search of records about Belize in 2007"), *aff'd sub nom. Day v. United States Dep't of State*, No. 20-5072, 2021 WL 2525677 (D.C. Cir. Apr. 27, 2021); *Donoghue v. Office of Info. Policy, U.S. Dep't of Justice*, 157 F. Supp. 3d 21, 23 n.2 (D.D.C. 2016) (denying plaintiff's request to expand scope of civil action to include three additional agencies where complaint pertained to single FOIA request to a single agency); *see also Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984) (emphasizing that agency is required to read FOIA request as drafted, "not as either [an] agency official or [requester] might wish it was drafted").

It is the requester's obligation to ask for what he wants. If plaintiff wanted records spanning a ten-year period, he should have requested them, and he still may do so by submitting new FOIA requests. *See Kowalczyk*, 73 F.3d at 389 ("[I]f the requester discovers leads in the documents he receives from the agency, he may pursue those leads through a second FOIA request."). Plaintiff's motion to amend is denied.

### B. FBI's Interpretation of Plaintiff's Request

FBI construes plaintiff's request as one under FOIA alone for information about third parties, not himself, *see* Seidel Decl. ¶¶ 5-6, 15; SMF ¶ 28, and plaintiff objects, *see* Pl.'s Opp'n at 1 ¶ 1. According to plaintiff, his "REQUESTS only asked for the identities, numbers – some form of identification for those *who searched HIS criminal histories*," and questions "how . . .

that [can] be misconstrued as a request for records" related to a third party. *Id.* at 4 ¶ 3 (emphasis in original). He also contends that FBI should have treated his request as one under the Privacy Act in addition to FOIA, *see id.* at 2 ¶ 8, for "*his* records and file," *id.* at 3 ¶ 1 (emphasis in original). Plaintiff's interpretation of his requests is just not reasonable.

By requesting identifying information about individuals who may have searched FBI and BOP databases for the purpose of accessing plaintiff's criminal history, plaintiff necessarily is requesting information about individuals *other than himself*, even if the records the third parties may have accessed pertained to plaintiff. This is not a situation where plaintiff made a "request . . . to gain access to his record or to any information pertaining to him which is contained in [an agency's] system [of records]." 5 U.S.C. § 552a(d)(1). As defendants point out, plaintiff "is not asking for his own name, phone number, or electronic identification[.]" Reply at 1. Had plaintiff sought information about himself, or had plaintiff sought access to information about himself under the Privacy Act, the requests would have, and should have, yet did not, made his intention clear. Therefore, FBI did not err by construing the request as one for information about third parties and by processing plaintiff's request under FOIA alone.

**C. FBI's Glomar Response Under Exemptions 6 and 7(C)**

Pursuant to "longstanding policy," Seidel Decl. ¶ 16, the FBI asserts "an Exemption (b)(6) and (b)(7)(C) Glomar response . . . , neither confirming nor denying the existence or non-existence of law enforcement records, in those instances where an individual seeks access to information regarding a third party, unless the requester establishes a significant public interest in disclosure that outweighs the third party's privacy interests," *id.* (footnote omitted).

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. §

8

552(b)(6), and Exemption 7 protects "records or information compiled for law enforcement purposes," but only to the extent that disclosure would cause an enumerated harm, 5 U.S.C. § 552(b)(7). Although the two exemptions are similar, "'Exemption 7(C) is more protective of privacy than Exemption 6' and thus establishes a lower bar for withholding material." *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) (citing *U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 496 n.6 (1994)) (additional citation omitted). And where, as here, the agency relies on both Exemptions 6 and 7(C) for the same material, the Court need not "consider Exemption 6 separately[.]" *Roth v. Dep't of Justice*, 642 F.3d 675, 681 (D.C. Cir. 2017); *see, e.g., Clemente*, 2022 WL 17092585, at *6.

### 1. Law Enforcement Records

The FBI's first task is to demonstrate that the information at issue was compiled for law enforcement purposes. When a law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987). It "must simply show that the nexus between the agency's activity . . . and its law enforcement duties is based on information sufficient to support at least a colorable claim of its rationality." *Berard v. Fed. Bureau of Prisons*, 209 F. Supp. 3d 167, 172 (D.D.C. 2016) (quoting *Keys*, 830 F.3d at 340) (internal quotation marks omitted); *Campbell v. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998) (stating that agency need only "establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law") (internal quotation marks and citation omitted); *see also Pratt v. Webster*, 673 F.2d 408, 421 (D.C. Cir. 1982).

The declarant describes FBI as the federal government's "primary investigative agency . . . with authority and responsibility to all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States." Seidel Decl. ¶ 12. Thus, defendants demonstrate, and plaintiff does not dispute, that FBI is a law enforcement agency. SMF ¶ 6.

Insofar as plaintiff requests "records specifically related to his criminal history," *id*. ¶ 13, from the FBI, the declarant states that responsive "records, should any exist, would have been collected and maintained by the FBI as part of its law enforcement mission," *id*. Plaintiff "challenges the characterization" of his FOIA request as one "for records made for law enforcement purposes, exempted by § 552(b)(7)(C)." Pl.'s Opp'n at 1-2 ¶ 3 (emphasis in original). The basis for his objection is that the records do not relate to "*investigations* of any sort[.]" *Id*. at 4 ¶ 3. Rather, he seeks "the identities, numbers – some form of identification for those "*who searched HIS criminal histories*," and questions "[h]ow . . . that can be misconstrued as a request for records related to *a third party's* investigation by law enforcement[.]" *Id*. (emphasis in original). As discussed above, plaintiff's FOIA request reasonably is construed as a request for information about third parties, namely those who may have accessed plaintiff's criminal history via an FBI database. Plaintiff is mistaken if he believes Exemption 7 applies only if there were an actual or active investigation by the FBI or that third parties who may have accessed his criminal history are the subjects of an FBI investigation.

"Law enforcement entails more than just investigating and prosecuting individuals *after* a violation of the law." *Public Employees Emps. for Envt'l Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 203 (D.C. Cir. 2014) (emphasis in

10

original). For example, "civil investigations and proceedings" are law enforcement purposes also. *Mittleman v. Office of Personnel Management*, 76 F.3d 1240, 1243 (D.C. Cir. 1996) (per curiam) (citing *Pratt,* 673 F.2d at 420 n.32); *see Tax Analysts v. Internal Revenue Serv.*, 294 F.3d 71, 77 (D.C. Cir. 2002) (noting that "'law enforcement purposes' under Exemption 7 includes both civil and criminal matters within its scope"). And "[t]he ordinary understanding of 'law enforcement' includes . . . 'proactive steps designed to prevent criminal activity and to maintain security.'" *Public Employees for Envt'l Responsibility*, 740 F.3d at 203 (quoting *Milner v. Dep't of the Navy*, 562 U.S. 562, 582 (2011) (Alito, J., concurring)).

It is reasonable to conclude from FBI's submission that any records it maintains regarding an individual's criminal history would have been compiled for a law enforcement purpose within the scope of FBI's authority and responsibility. Thus, FBI meets its threshold showing that responsive records, if any exist, are law enforcement records for purposes of Exemption 7.

### 2. Exemption 7(C)

Exemption 7(C) applies if disclosure of law enforcement records "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C). The Court must balance the interest in privacy of individuals mentioned in the records against the public interest in disclosure. *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007); *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993). The privacy interest at stake belongs to the individual, not the government agency, *see U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-65 (1989)); *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989), and "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity," *Stern v. FBI*, 737

F.2d 84, 91-92 (D.C. Cir. 1984). Exemption "7(C)'s protective standard derives from the fact that 'the very mention of an individual's name' in law enforcement records could 'engender comment and speculation and carries a stigmatizing connotation.'" *Woodward v. U.S. Marshals Serv.*, No. 1:18-cv-1249 (RC), 2022 WL 296171, at *3 (D.D.C. Feb. 1, 2022) (quoting *Roth*, 642 F.3d at 1174) (quoting *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 666 (D.C. Cir. 2003)).

When balancing the private interest against the public interest in disclosure, "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489 U.S. at 773). It is the FOIA requester's obligation to "show that the public interest sought to be advanced is a significant one" and that "the information [he seeks] is likely to advance that interest." *Boyd v. Crim. Div. of U.S. Dep't of Justice*, 475 F.3d 381, 387 (D.C. Cir. 2007) (citing *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)). The D.C. Circuit has held "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Servs.*, 926 F.2d at 1206; *see Schrecker*, 349 F.3d at 666 ("Assuming that the 'private' individuals mentioned in the records are living, their names and identifying information are presumptively exempt from disclosure under the *SafeCard* rule.").

According to the declarant, FBI "determined that merely acknowledging the existence or non-existence of records responsive to [p]laintiff's request would trigger harm" that Exemption 7(C) is designed to protect "in that his request sought personal and identifying information [about] third party individuals." Seidel Decl. ¶ 15. Further, he stated, "[i]t is well-recognized

12

that individuals have substantial privacy interests in relation to being associated with law enforcement investigations because any such association can engender comment, speculation, or harassment; can be embarrassing and stigmatizing; and can, in some circumstances, result in physical harm or threats of harm or death." *Id*. ¶ 16.  Only if a requester put forth a public interest in disclosure of third party information would the FBI proceed to the second step, "balanc[ing] that public interest against the third party's privacy interests," *id*. ¶ 17, and would process the FOIA request "only if it determines that a significant public interest outweighs the individual's privacy interest," *id*.  Because plaintiff failed to articulate a public interest in disclosure of the requested information, *id*. ¶ 18, specifically third parties' "phone numbers and other electronic identifiers," *id*. ¶ 20, FBI asserts its Glomar response without having conducted a search for responsive records, *see id*. ¶¶ 13, 20, on the ground that "the nature of the requested records alone prohibits acknowledgment and disclosure," *id*. ¶ 20.

Plaintiff maintains that the Glomar response "was totally inappropriate [and] an abuse of its usage[.]"  Pl.'s Opp'n at 2 ¶ 4; *see id*. at 5 ¶ 4.  In general terms, plaintiff denies that Exemption 7(C) "has any relevance to this case," and asserts that "revealing the identities" of third parties "would not produce any harm to any third parties."  Pl.'s Opp'n at 6.  Plaintiff offers no support for his arguments, however, and cannot defeat defendants' showing on summary judgment.

### D. "No Records" Responses

Curiously, although plaintiff claims to have requested information about himself, he does not mention defendants' "no records" responses.

13

### 1. Central Records System

FBI's declarant explains that "records concerning [plaintiff's] criminal history" likely would be "indexed within the automated indices of the FBI's Central Records System," Seidel Decl. ¶ 21, "consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI while fulfilling its mission and integrated functions as a law enforcement and intelligence agency, and in the fulfillment its administrative and personnel functions," *id*. ¶ 22. The declarant describes the FBI's records system at length, *see id*. ¶¶ 22-27, and explains the method by which agency staff searched the system, *see id*. ¶¶ 28-29, for information about plaintiff.

Relevant to this discussion are the following facts:

- FBI searched its primary case management system using "Allan Schubert" and "Schubert, Allen" as search terms; and
- FBI located no responsive records.

*See* SMF ¶¶ 13-14. FBI's proffered facts are deemed admitted, and the agency adequately demonstrates that its search for records about plaintiff was reasonable, even if the search yielded no responsive records. Its "no records" response is justified.

### 2. SENTRY and Inmate Locator

Given plaintiff's failure to respond to defendants' proffered facts, plaintiff admits the following:

- Plaintiff did not indicate that his request to BOP as one under the Privacy Act or a request for information about himself;
- Plaintiff sought information about unidentified third parties, and not about himself;
- SENTRY is the only BOP system of records that could be considered a "prisoner look up" system;
- SENTRY cannot track or report what transactions are completed by particular users;
- BOP's Inmate Locator does not maintain information about a prisoner's criminal history;
- BOP's Inmate Locator cannot track or record users of the tool; and
- There exist no records responsive to plaintiff's FOIA request to BOP.

14

*See* SMF ¶¶ 20-23, 29.  Accepting BOP's factual proffer as true, BOP establishes that SENTRY and Inmate Locator are not capable of and do not maintain the information plaintiff requested. Thus, its "no records" response is justified.

### III. CONCLUSION

The Court concludes that (1) defendants reasonably construed plaintiff's requests as requests for information about third parties under FOIA; (2) FBI properly asserted a Glomar response; (3) FBI's and BOP's "no records" responses were proper; and (4) plaintiff cannot, essentially, amend his FOIA request by amending his complaint in the course of this litigation. Accordingly, defendants' summary judgment motion will be granted and plaintiff's motion to amend will be denied.  An Order is issued separately.

DATE: January 29, 2024 COLLEEN KOLLAR KOTELLY
United States District Judge